# United States Court of Appeals for the Federal Circuit

---

**STEPHEN CONNOR,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2021-1064

---

Petition for review of the Merit Systems Protection Board in No. DC-0714-20-0275-I-1.

---

Decided: August 12, 2021

---

JOEL J. KIRKPATRICK, Joel J. Kirkpatrick, P.C., Plymouth, MI, argued for petitioner.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.

---

Before NEWMAN, LOURIE, and DYK, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* DYK.

Opinion concurring in part and dissenting in part filed by
*Circuit Judge* NEWMAN.

DYK, *Circuit Judge*.

Petitioner Stephen Connor appeals a decision of the
Merit Systems Protection Board ("Board") affirming his re-
moval by the Department of Veterans Affairs ("VA").  We
affirm.

BACKGROUND

I

On June 23, 2017, Congress passed the Department of
Veterans Affairs Accountability and Whistleblower Protec-
tion Act of 2017, Pub. L. No. 115-41, 131 Stat. 862.  The Act
created an expedited procedure allowing the VA Secretary
to remove, demote, or suspend VA employees for miscon-
duct or substandard performance.  *See id.* § 202, 131 Stat.
at 869–73 (codified at 38 U.S.C. § 714).  This created a "less
rigorous" procedure than existing processes.  *Sayers v.
Dep't of Veterans Affs.*, 954 F.3d 1370, 1374–75 (Fed. Cir.
2020) (contrasting § 714 with adverse actions under title 5,
chapter 75 and title 5, chapter 43).  Section 714 limits re-
view of disciplinary actions by administrative judges and
the Board.  Under § 714, a disciplinary decision must be
upheld if "supported by substantial evidence," replacing
the previous preponderance of the evidence standard.  *Id.*
at 1376 (citing § 714(d)(2)(A) and 5 U.S.C. § 7701(c)(1)(B)).
The statute also provides that the administrative judge
and the Board "shall not mitigate the penalty prescribed by
the Secretary."  38 U.S.C. § 714(d)(2)–(3); *see also Sayers*,
954 F.3d at 1376 (explaining that § 714(d)(2)(B) "prohibits
the administrative judge from *mitigating* a penalty sup-
ported by substantial evidence").

The question is whether the enactment of § 714
changed the preexisting requirement that the so-called
*Douglas* factors—used to assess the reasonableness of dis-
ciplinary agency actions—be applied both by the agency in

its initial penalty decision and by the Board in reviewing that decision.

## II

In October 2007, Mr. Connor began working as the Chief of Police Services for the Fayetteville, North Carolina VA Medical Center ("Fayetteville VAMC"). As the highest security authority at the Fayetteville VAMC, Mr. Connor was responsible for the direction and control of the Fayetteville VAMC police service, including oversight of over thirty officers and staff members. The Fayetteville VAMC was equipped with an armory, where the police service stored weapons and ammunition. The armory had various access controls, including a keypad lock, a camera, and a separately locked ammunition locker.

In November 2018, the Fayetteville VAMC police service took delivery of approximately 20,000 rounds of ammunition. Mr. Connor and his direct subordinate, Deputy Chief Dennis Bechtel, were able to store the 20,000 rounds in the ammunition locker after removing its shelves and reinforcing the bottom of the locker with bricks.

Shortly thereafter, the police service received a delivery of an additional 4,000 rounds of ammunition. Mr. Connor determined that the ammunition locker could not fit the additional rounds or accommodate their weight without collapsing. VA policy required ammunition to be secured with specified physical access controls. Without seeking a waiver of this policy, Mr. Connor authorized Mr. Bechtel to store the 4,000 rounds in a locked cabinet in Mr. Bechtel's office—which did not have the requisite access controls—until enough space opened in the ammunition locker. At the time, the Fayetteville VAMC police service was scheduled for quarterly firearms training at a shooting range about two weeks later; such trainings typically consumed at least 10,000 rounds of ammunition. Thus, after the training, space would be available to properly store the 4,000 rounds in the ammunition locker. Mr. Connor

anticipated that when more space became available in the locker, the 4,000 additional rounds would be transferred to the locker. After the training, however, Mr. Connor never checked whether this had occurred.

Approximately three months later, in February 2019, Luis Arana became the police service Training Officer, taking over the position from Mr. Bechtel. On June 14, 2019, after a routine inventory, Mr. Arana notified Mr. Connor that 4,000 rounds of ammunition were missing. Mr. Connor and Mr. Arana inspected Mr. Bechtel's office, where they found the key to his cabinet in a mug on his desk. The 4,000 rounds were still in Mr. Bechtel's cabinet; Mr. Connor and Mr. Arana then transferred the rounds to the ammunition locker in the armory. After moving the 4,000 rounds to the ammunition locker, Mr. Connor filed a report explaining that he had temporarily authorized Mr. Bechtel to store the 4,000 rounds in his office cabinet, and that the 4,000 rounds were never transferred to the armory after space became available in the ammunition locker. Mr. Connor requested the assistance of Human Resources Employee and Labor Relations Specialist James Gaydos in taking disciplinary action against Mr. Bechtel.

## III

On June 20, 2019, the VA began an investigation into allegations of mismanagement at the Fayetteville VAMC, including the failure to inventory ammunition, misuse of government vehicles, lack of training, unfair hiring and promotion practices, employee misconduct, and lack of leadership and oversight. Mr. Connor was reassigned from his position pending the investigation. After the investigation, the VA charged Mr. Connor with failure to provide management oversight, based on twenty-seven specifications, and proposed his removal.

Specifications 1–24 alleged that Mr. Connor had failed to provide performance plans and progress reviews to some members of the police services staff (one staff member per

specification). Specification 25 alleged that Mr. Connor improperly authorized Mr. Bechtel to store the 4,000 rounds of ammunition in a location without the physical access controls required under VA regulations; the VA also found that Mr. Connor had failed to follow up to ensure the ammunition was transferred to the armory locker. Finally, specifications 26 and 27 respectively alleged that Mr. Connor failed to maintain current and accurate training records and failed to provide active threat response training.

In a decision letter dated December 20, 2019, Daniel Ducker, the Executive Director of the Fayetteville VAMC, sustained all twenty-seven specifications and the penalty of removal pursuant to § 714. In his decision letter, Mr. Ducker explained that removal was appropriate due to Mr. Connor's "position of significant trust and responsibility," "years of service," and "past record," as well as "the seriousness of the offense." J.A. 48. Mr. Ducker also represented that he had considered whether there were any mitigating or extenuating circumstances, concluding that Mr. Connor's offense was so grave that mitigation of the penalty was not warranted. At the time, the VA took the position that consideration of the *Douglas* factors (described below) was unnecessary. Agency's Resp. to Appellant's Initial Disc. Reqs., J.A. 355, 357 (asserting that the VA had no obligation to consider the *Douglas* factors in disciplinary actions under § 714).

On appeal, the Board determined that the VA had failed to prove twenty-six of the twenty-seven specifications by substantial evidence. With respect to specifications 1–24, the Board determined that Mr. Bechtel, not Mr. Connor, was responsible for issuing the performance plans and progress reviews, and that no evidence suggested that Mr. Connor should have known that Mr. Bechtel had not issued these items. Regarding specification 26, the Board concluded that although some training documentation was missing, the VA failed to prove that this was Mr. Connor's fault. As for specification 27, the Board found that police

services employees *were* provided active threat response training as part of their regular firearms training, and that Mr. Connor was preparing such training for other Fayetteville VAMC employees before he was reassigned.

However, the Board upheld specification 25, regarding the improper storage of ammunition. The Board held that the *Douglas* factors remained applicable after the enactment of § 714. While recognizing that Mr. Ducker "did not conduct a formal '*Douglas* factor analysis' at the time of his decision," J.A. 23, and that the VA's position was that § 714 abrogated the requirement to review the *Douglas* factors, the Board determined that Mr. Ducker had given due consideration to the relevant *Douglas* factors when deciding to remove Mr. Connor. The Board noted that Mr. Connor had failed to seek a waiver of the VA's access control policy before storing the ammunition outside of the armory locker, and never followed up to see if the 4,000 rounds had been transferred once space became available. The Board also credited Mr. Ducker's testimony that this specification was the most severe of Mr. Connor's alleged misconduct and was itself sufficient to warrant his removal. Accordingly, based on specification 25, the Board upheld the VA's charge and the penalty of removal.

Mr. Connor petitions for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of the Board's decisions is limited by statute. We shall "hold unlawful and set aside" only those decisions of the Board that are:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c); *see also* 38 U.S.C. § 714(d)(5)(A); *Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1318 (Fed. Cir. 2021) (applying standard of review under § 7703(c) to removal decision under § 714).

## I

## A

At the outset, it is necessary to clarify the legal standard governing VA disciplinary actions under § 714. The government argues, as it did before the Board, that under § 714 the VA need not consider the so-called "*Douglas* factors" articulated in *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981).

In *Douglas*, the Board listed twelve nonexclusive factors for an agency to consider when determining whether a penalty is appropriate:

(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities . . . ;

(2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3) the employee's past disciplinary record;

(4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

    (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;

    (7) consistency of the penalty with any applicable agency table of penalties;

    (8) the notoriety of the offense or its impact upon the reputation of the agency;

    (9) the clarity with which the employee was on notice of any rules that [were] violated . . . ;

    (10) potential for the employee's rehabilitation;

    (11) mitigating circumstances surrounding the offense . . . ; and

    (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

*Id.* at 332. While not all of the factors will be pertinent to every case, the Board in *Douglas* explained that the agency must "consider the relevant factors" and "strike a responsible balance" in selecting a penalty. *See id.* at 332–33.

Before the enactment of § 714, this court regularly endorsed the *Douglas* factors in adverse actions under title 5, chapter 75, and required both agencies and the Board to consider the relevant *Douglas* factors in assessing whether a penalty was reasonable. *See, e.g.*, *Purifoy v. Dep't of Veterans Affs.*, 838 F.3d 1367, 1371 (Fed. Cir. 2016) (explaining that an agency must establish that "the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas*"); *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009) (same); *Zingg v. Dep't of the Treasury*, 388 F.3d 839, 841 (Fed. Cir. 2004) (noting that we have "repeatedly" approved the *Douglas* factors "as a basis for determining the reasonableness of a penalty").

We have accordingly vacated and remanded decisions by the Board sustaining an adverse action when the Board failed to properly consider the *Douglas* factors. In *Purifoy*, for example, the Board sustained the VA's removal of a housekeeping aid for his extended unauthorized absence. 838 F.3d at 1368. While the Board "analyzed some, but not all, of the *Douglas* factors," we explained that the Board failed to properly consider the potential for the employee's rehabilitation and the adequacy of alternative sanctions—the tenth and twelfth *Douglas* factors, respectively. *Id.* at 1371. We held that an appropriate penalty must reflect "a responsible balancing of the relevant factors." *Id.* at 1373 (quoting *Douglas*, 5 M.S.P.B. at 332).

Similarly, in *Malloy*, we reviewed an employee's removal for "disrespectful communication to a supervisor and failure to follow instructions." 578 F.3d at 1354. We found that the administrative judge and the Board failed to consider the employee's "voluminous" medical evidence of her mental impairment, which would have been directly relevant under the eleventh *Douglas* factor. *Id.* at 1357. We vacated the Board's decision and remanded "for consideration of Ms. Malloy's evidence of mental impairment, and reapplication of the *Douglas* factors in light of this evidence." *Id.*

Since the enactment of § 714, we have continued to require that agencies (other than the VA, to which § 714 applies) and the Board consider the *Douglas* factors in connection with disciplinary action against employees. *See, e.g.*, *Holmes v. U.S. Postal Serv.*, 987 F.3d 1042, 1047 (Fed. Cir. 2021) (noting the Board's obligation to review "whether the agency has responsibly balanced" the *Douglas* factors); *Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1369 (Fed. Cir. 2019) ("In determining the reasonableness of the penalty imposed by an agency, the Board considers the factors outlined in *Douglas* . . . . The penalty chosen by the agency must represent a responsible balancing of the relevant *Douglas* factors."); *Hansen v. Dep't of Homeland*

*Sec.*, 911 F.3d 1362, 1367 (Fed. Cir. 2018) (noting our requirement that "the penalty selected be reasonable when considered against the relevant [*Douglas*] factors" (quoting *Brennan v. Dep't of Health & Hum. Servs.*, 787 F.2d 1559, 1563 (Fed. Cir. 1986))). This requirement that the *Douglas* factors be considered is consistent with the Supreme Court's decision in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), which held that, when reviewing whether an agency action was arbitrary or capricious under the Administrative Procedure Act, courts "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." 401 U.S. at 416, *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

B

The government argues that because § 714 does not allow the Board to mitigate penalties, the VA is no longer required to consider the *Douglas* factors when removing, demoting, or suspending a VA employee pursuant to § 714; and that the Board too is not required to consider the *Douglas* factors. In the government's view, the *Douglas* factors emanated from the Board's mitigation authority, and the elimination of the mitigation authority eliminated the need to apply the *Douglas* factors in VA disciplinary actions.

There is no basis for the government's argument that the statutory ban on penalty mitigation by the Board eliminated the obligation to consider and apply the *Douglas* factors. Before the enactment of § 714, the Board, and this court, had long recognized the difference between review of the penalty imposed and mitigation of the penalty. *See, e.g., Archuleta v. Hopper*, 786 F.3d 1340, 1353 (Fed. Cir. 2015) (noting Board's "jurisdiction to assess whether the penalty was appropriate" and "authority to mitigate" the penalty); *Lachance v. Merit Sys. Prot. Bd.*, 147 F.3d 1367, 1374 (Fed. Cir. 1998) (distinguishing between the Board's

analysis of whether a penalty was justified from the subsequent decision of whether to mitigate the penalty).

*Douglas* itself distinguished between the Board's authority to review agency actions, provided by statute, and its authority to mitigate penalties, "inherited" from its predecessor, the Civil Service Commission.  *See* 5 M.S.P.B. at 316, 326; *see also id.* at 323 (contrasting the Board's authority to mitigate penalties with remand "to the employing agency for selection and imposition of a new penalty").  Thus, the government is mistaken in asserting that "the Board's authority to review penalties was derived from the Board's . . . robust mitigation authority inherited from the [Civil Service] Commission."  Appellee's Br. at 34.  As this court and the Board have long understood, the Board's authority to review an agency disciplinary action, including the chosen penalty, is established by statute, viz., 5 U.S.C. § 7701 (and, now, § 714 itself); it is quite distinct from the Board's preexisting authority to mitigate an agency's penalty, which § 714 eliminated in VA disciplinary actions.

We explained in *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370 (Fed. Cir. 2020), that while § 714 bars the Board from mitigating a penalty, mitigation "stands apart" from review of "the totality of the adverse action decision," which necessarily encompasses the choice of penalty in the first instance.  *See* 954 F.3d at 1376 (citing § 714(d)(2)(B), (3)(C)).  Thus, surveying the text and legislative history of § 714, applying "basic precepts of administrative law and judicial review," and considering "the historical practice of reviewing the penalty in adverse action decisions"—and repeatedly citing *Douglas* with approval—we concluded that "§ 714 requires the Board to review for substantial evidence the entirety of the VA's removal decision—including the penalty." *Id.* at 1375–79.  We reiterated this holding in *Brenner v. Department of Veterans Affairs*, 990 F.3d 1313 (Fed. Cir. 2021), explaining that the Board's review of a VA disciplinary action must include consideration of whether the chosen penalty is

reasonable. 990 F.3d at 1323 (citing *Harrington v. Dep't of Veterans Affs.*, 981 F.3d 1356, 1358 (Fed. Cir. 2020)).

Although we affirmed the Board's authority to review penalties, as distinct from mitigation, we did not in *Sayers* or *Brenner* address the continued relevance of the *Douglas* factors. We now conclude that § 714 did not alter preexisting law, which required the VA and the Board to apply the *Douglas* factors to the selection and review of penalties in VA disciplinary actions.

By its terms, § 714 provides that administrative judges and the Board "shall uphold the decision of the Secretary to remove, demote, or suspend an employee," and "shall not mitigate the penalty prescribed by the Secretary," if the Secretary's decision "is supported by substantial evidence." § 714(d)(2)–(3). Nowhere, however, does § 714—or the act in which it was created—mention the *Douglas* factors, or suggest that the *Douglas* factors are excluded from the scope of review. *See generally* § 714; Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, Pub. L. No. 115-41, 131 Stat. 862. Nor does the legislative history evince any intent to displace the *Douglas* factors in VA disciplinary actions.

In short, § 714 precludes the Board only from *mitigating* the agency's chosen penalty. *Sayers*, 954 F.3d at 1376. It does not alter the penalty review with respect to the *Douglas* factors. Before the enactment of § 714, such review included an evaluation of whether the penalty was reasonable in light of the relevant *Douglas* factors. Section 714 did not change this standard, and the VA and Board must continue to apply the relevant *Douglas* factors in considering the reasonableness of the penalty in VA disciplinary action cases. Absent mitigation authority, however, if the Board determines that the VA failed to consider the *Douglas* factors or that the chosen penalty is unreasonable, the Board must remand to the VA for a redetermination of the penalty. *See Brenner*, 990 F.3d at 1325

(explaining that, because the Board cannot mitigate or independently set penalties, "if the [Board] concludes that the VA's removal decision is unsupported by substantial evidence, the [Board] should remand to the VA for further proceedings").

## II

In sustaining the VA's decision, the Board concluded that the deciding official, Mr. Ducker, had considered the relevant *Douglas* factors. Mr. Connor argues that the Board erred by upholding the VA's removal decision because the VA failed to consider the sixth *Douglas* factor, viz., the consistency of the penalty with penalties imposed for the same or similar offenses. The Board found that the VA did properly consider this factor.

In reviewing the VA's consideration of comparator cases under *Douglas*, the Board assessed the testimony of Mr. Ducker and Mr. Gaydos. The Board found that Mr. Ducker credibly testified that, while he did not review documents related to prior disciplinary actions, he was aware of comparator cases and considered them in sustaining Mr. Connor's removal.

Mr. Ducker's testimony was contradicted by the VA's response to Mr. Connor's request for admissions, in which the agency represented that Mr. Ducker had not considered comparable disciplinary actions. *See* Agency's Resp. to Appellant's Initial Disc. Reqs., J.A. 355, 368 (admitting that Mr. Ducker "did not review the comparative discipline of other [VA] employees" because the VA believed such review unnecessary under § 714). Mr. Ducker testified that the agency's response was incorrect and that he had not been contacted regarding this response to Mr. Connor's request for admissions. The Board credited Mr. Ducker's testimony on this point as well. Although Mr. Gaydos testified that he had emailed the discovery request to Mr. Ducker and that Mr. Ducker had responded, the Board found his testimony "entirely incredible," given, inter alia, the lack of

documentary evidence of the purported email exchange. J.A. 25.

Weighing this testimony, the Board concluded that Mr. Ducker had adequately considered comparator cases under the sixth *Douglas* factor in sustaining Mr. Connor's removal, and that Mr. Ducker did not err in concluding that the comparator cases were substantially different. We see no error in the Board's determination.

Mr. Connor also argues that Mr. Ducker's testimony is not sufficient to show consideration of the sixth *Douglas* factor because the evidence demonstrates that the VA did not agree that it was required to consider the *Douglas* factors. This is not enough to set aside the Board's decision. That the VA did not agree that a *Douglas* factor analysis was required does not compel the conclusion that Mr. Ducker, the deciding official, did not consider the *Douglas* factors.

Nor has Mr. Connor shown that we have reason to set aside the Board's decision determining that the penalty of removal was reasonable. The Board found that his offense was serious and that his removal could be sustained on the ammunition specification alone. As this determination was supported by substantial evidence and was not arbitrary or capricious, we have no basis to overturn the Board's decision.

Finally, at oral argument for the first time, Mr. Connor argued that mere consideration of the *Douglas* factors was insufficient; rather, in his view, the VA was required to document its consideration of the *Douglas* factors in its written decision. We decline to address the issue here, raised as it was for the first time at oral argument.

## AFFIRMED

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**STEPHEN CONNOR,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2021-1064

---

Petition for review of the Merit Systems Protection Board in No. DC-0714-20-0275-I-1.

---

NEWMAN, *Circuit Judge*, concurring in part, dissenting in part.

This appeal concerns application of 38 U.S.C. § 714 to the termination by the Department of Veterans Affairs (DVA or "Agency") of the employment of Stephen Connor, who was Chief of Police Services at the Fayetteville, North Carolina Veterans Administration Medical Center. The charge was "Failure to Provide Management Oversight," for which the agency recited twenty-seven "specifications." The Merit Systems Protection Board (MSPB or "Board")

held that twenty-six of the twenty-seven specifications were not established.[1]

Section 714, enacted in the Accountability and Whistle-blower Protection Act of 2017, includes provisions for the purpose of strengthening the employer position of the DVA in employee appeal of adverse actions, thereby expediting finality of such actions. Two subsections of the statute are of relevance here: § 714(d)(3)(B),[2] changing the standard of review in favor of the DVA in appeals to the MSPB; and § 714(d)(3)(C),[3] denying the MSPB authority to mitigate the penalty imposed by the DVA.

The DVA's position was that these changes eliminated the DVA's obligation to apply the *Douglas* factors and other employee protections in selecting the penalty, the DVA stating:

> the nexus to the efficiency of the service and the reasonableness of the agency's imposed penalty, along with a consideration of mitigating and aggravating factors under *Douglas v. Veterans Affairs,* 5 M.S.P.R. 280, 305–06 (1981), are immaterial.

---

[1]    *Connor v. Dep't of Veterans Affs.,* No. DC-0714-20-0275-I-1, 2020 WL 3638298 (M.S.P.B. July 1, 2020) ("Board Op.").

[2]    38 U.S.C. § 714(d)(3)(B): Notwithstanding section 7701(c)(1)(B) of title 5, the Merit Systems Protection Board shall uphold the decision of the Secretary to remove, demote, or suspend an employee under subsection (a) if the decision is supported by substantial evidence.

[3]    38 U.S.C. § 714(d)(3)(C): Notwithstanding title 5 or any other provision of law, if the decision of the Secretary is supported by substantial evidence, the Merit Systems Protection Board shall not mitigate the penalty prescribed by the Secretary.

Agency's Response to Appellant's Initial Discovery Request (Feb. 20, 2020) at Appx245.

The MSPB did not agree with the DVA's interpretation of § 714, and this court shares the view of the MSPB. Thus the court holds that the *Douglas* factors must always be considered by the DVA. I agree, and I join this aspect of the court's decision.

However, I do not join the court's affirmance of the MSPB's decision on the merits, for that decision is not supported by substantial evidence. I respectfully dissent from the court's decision, as I shall explain.

A

### *Substantial evidence does not support the DVA's purported application of the Douglas factors*

The DVA terminated the employ of Police Chief Connor, a forty-year veteran of military and law enforcement service, for "Failure to Provide Management Oversight," reciting twenty-seven specifications. On Connor's appeal to the MSPB, the administrative judge ("AJ") held[4] that twenty-six of the twenty-seven specifications were not supported. The MSPB sustained one specification, as follows:

> Specification 25: In or about November of 2018, you authorized Deputy Chief Bechtel to store approximately 4,000 rounds of ammunition in a locked cabinet in his office, B-7. Deputy Chief Bechtel's office did not have appropriate physical access controls in place as directed in VA Handbook Security and Law Enforcement 0730/4 para. 7(Q) which states, "for monitoring and controlling access to areas

---

[4]    In the absence of a quorum, the decision of the administrative judge is the MSPB's final decision.

identified as requiring high or medium levels of assurance."

Board Op. at 8.  In its decision the DVA did not apply *Douglas* factor analysis to the penalty of removal on the recited twenty-seven specifications.  At the MSPB hearing the DVA argued that specification 25 alone warranted removal, but provided no evidence or reasoning, no *Douglas* factor analysis.

The question before us is not whether specification 25 is an accurate statement of events;[5] the question is the DVA's compliance with statute and precedent including the *Douglas* factors, and the role of the MSPB in assuring DVA compliance with the *Douglas* factors.  Connor particularly

---

[5]    At the MSPB hearing it was not disputed that the 4,000 rounds of ammunition were stored in a locked cabinet in a locked office accessible only to three persons (Connor, Deputy Chief Bechtel, and an assistant) with video-monitoring in the hallway.  When Connor found the rounds still in Bechtel's locked office and cabinet after several months, Connor reported the incident to DVA authorities.  Transcript of the June 19, 2020 MSPB Hearing at Appx893–896.  Connor's "Report of Contact" included: "In early November 2018, we had 4000 rounds of ammunition come in to B-14 in 4 boxes.  The ammo locker was full, past capacity, and was collapsing in on itself.  Deputy Chief and I had to re-enforce the bottom as it was caving in, and the shelves were bowing downward.  Even after removing the shelves the locker was bowing in the middle.  Due to this fact, I authorized the Deputy Chief to temporarily store the 4 cases [of ammunition] in a locked cabinet in his office B-7, with the understanding that the ammo was to be added to the ammunition count received, and as ammunition was used in the ammo locker the ammunition was to be moved into room B14C (Armsroom)."  Report of Contact at Appx90.

flags *Douglas* factor No. 6, as relevant to the penalty of termination of employment based on specification 25:

> (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses.

*Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 332 (1981). When the agency treated similarly situated employees differently, the MSPB has recognized that this factor "is of sufficient weight that it *may* warrant an outcome different from that of the initial decision." *Lewis v. Dep't of Veterans Affs.*, 2009 M.S.P.B. 96, ¶ 8 (2009).

At the MSPB, Connor sought discovery of the DVA's review of the *Douglas* factors, including consideration of penalties for comparable offenses, for the DVA decision letter made no mention of these aspects. The DVA responded:

> <u>REQUEST FOR ADMISSION No. 1</u>: The Agency did not apply any of the *Douglas Factors* in the decision-making process to remove the Appellant.

> <u>RESPONSE</u>: Admitted that the Agency did not apply a <u>Douglas</u> factors analysis to the Appellant's removal, nor is it required to apply such an analysis. See Response to Interrogatory 5.

Agency's Response to Appellant's Initial Discovery Requests (Feb. 20, 2020) at Appx246. In further Response filed after the AJ granted Connor's Motion to Compel, the DVA stated:

> the Agency did not conduct a <u>Douglas</u> factors analysis and is not required to conduct such an analysis.

Agency's Response to Appellant's Motion to Compel (Mar. 9, 2020) at Appx277.

The DVA objected to Connor's discovery requests as "overly broad in scope and unduly burdensome" and

"seek[ing] irrelevant information." Agency's Response to Appellant's Initial Discovery Requests (Feb. 20, 2020) at Appx241. On the question of comparative discipline, *Douglas* factor 6, the DVA responded:

> REQUEST FOR ADMISSION No. 2: The deciding official, Mr. Daniel L. Decker did not review the comparative discipline of other Agency employees in the decision-making process to remove the Appellant.

> RESPONSE: Objection – this Admission seeks information that is neither relevant nor likely to lead to relevant information in an action taken under 38 U.S.C. § 714. Without waiving this objection, Admitted; under 38 U.S.C. § 714 the deciding official was not required to review "the comparative discipline of other Agency employees in the decision-making process to remove the Appellant."

*Id.* at Appx253. The interrogatory responses were attested "under penalty of perjury." *Id.* at Appx268.

At the MSPB appeal the DVA took a directly contrary position, and the deciding official stated that he indeed considered comparative penalties, although he offered no record, no documentation, no citation of authority showing comparative penalties, and no corroboration, for this changed position. Nonetheless, the AJ found for the changed position and held that the deciding official's statement was supported by substantial evidence and that comparative penalties were considered. On this basis, the AJ sustained the DVA's decision to terminate Connor's employment.

It is apparent that no reasonable decision-maker could deem this changed and unsupported assertion to outweigh the multiple sworn averments, as well as the evidence provided by Connor of the DVA's penalties of five days suspension for the same charge arising from much more egregious

actions. Nonetheless, my colleagues accept the AJ's ruling. This is the area of my dissent.

B

### *The purpose of judicial review is to assure administrative conformance to law*

The courts are charged to assure that administrative action is in conformity to law. The DVA's compliance with § 714 and the role of the MSPB were considered in *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370 (Fed. Cir. 2020):

> When correctly interpreted, § 714 requires the Board to review whether the Secretary had substantial evidence for his decision that an employee's actions warranted the adverse action.

*Id.* at 1375. In turn, the Federal Circuit must assure that the Board performs this obligation, and does so within the contemplation of the statute. Similarly, *Sayers* requires application of the arbitrary and capricious or abuse of discretion standard of 5 U.S.C. § 7703(c), explained in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) as determining whether the decision was based on consideration of the relevant factors and whether there was a clear error of judgment. In this appeal, however, the panel majority gives no heed to this admonition—although it is plainly embroiled in our review herein.

My colleagues err in holding that because § 714 bars the MSPB from "mitigating" the penalty imposed by the DVA, this bars the MSPB from review for substantial evidence. This aspect was resolved in *Sayers*, *supra*, for such an interpretation of § 714 renders useless the rights of MSPB and Federal Circuit appeal from DVA adverse actions, as recognized in § 714. Recognizing that the prohibition on "mitigation" warrants further clarification, *Sayers* established that the Agency's action must be

supported by substantial evidence, and that judicial review will ascertain whether that standard is met.

As stated in *Sayers*, the MSPB must "hold unlawful and set aside any agency action, findings, or conclusions found to be–(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence . . . ."  954 F.3d at 1377 (quoting 5 U.S.C. § 7703(c)). Although the Board quoted this standard, Board Op. at 21, it did not apply it, for there was no support for the deciding official's new statements contrary to the DVA's sworn Answers and anything else in the record.  *See also Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313 (2021).

The AJ did not reasonably apply the substantial evidence standard, for there was no evidence that the offense described in specification 25 was comparably punishable by removal.  At a minimum, the MSPB is required to give substantial evidence review to the DVA's action, assuring that the *Douglas* factors and other requirements of law and regulation are correctly applied by the DVA.

It is the judicial obligation to assure that the administrative state correctly applies its authorizing legislation. The MSPB did not meet the requirements of the employment statues entrusted to the Board.  As Connor proposes, "[a]n appropriate reading of *Douglas* in conjunction with § 714 is that, if the Board finds that the deciding official did not consider the *Douglas* Factors or finds that the deciding official's penalty analysis is unreasonable on a substantial evidence standard and/or arbitrary or capricious, then the Board must vacate rather than mitigate."  Reply Br. 5.

Rather than affirming the MSPB, as does the panel majority, the case should be remanded for correct application of the substantial evidence standard in light of the

*Douglas* factors.  I respectfully dissent from my colleagues' erroneous interpretation and applications of § 714.